Chun-Hui Miao
1014 Greene St.
Columbia, SC 29208
Telephone: (803) 777-2583
E-Mail: miao@moore.sc.edu

*Pro Se*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONGXIAO YUE,<br><br>    Plaintiff,<br><br>vs.<br><br>CHUN-HUI MIAO, BIAN-WANG.COM<br><br>    Defendants | Case No.: C18-1074-DMR<br><br>DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P. 12(b)(2), OR IN THE ALTERNATIVE, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a).<br><br>Hearing Date: May 10, 2018<br>Time: 11:00 a.m.<br>Courtroom: 4 - 3rd Floor, Oakland Courthouse<br><br>Judge: The Honorable Donna M. Ryu |

Defendant Chun-Hui Miao ("Defendant") files this Memorandum of Points and Authorities and a Supplemental Declaration (Supp. Decl.) in support of his Reply to Plaintiff Dongxiao Yue ("Yue")'s Opposition ("Yue Opp.") to Defendant's amended Motion to Dismiss ("Miao Mot.").

## I.  INTRODUCTION

In his desperate attempt to drag Defendant into the Court, Yue fabricated facts, distorted facts by revealing only half-truth, cited irrelevant facts, made baseless accusations, and submitted unfounded claims. In contrast, Defendant will focus on the legal arguments related to the substance of personal jurisdiction. These legal arguments clearly demonstrate that Yue's opposition is without merit, and therefore the lawsuit should be dismissed.

## II.  THERE IS NO "PURPOSEFUL AVAILMENT"

According to the Ninth Circuit Court, "'Purposeful availment' requires that the defendant 'have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state'." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (citations and internal quotation marks omitted). In the instant case, Defendant created the website as a hobby, not as a business. While courts have held that advertising on a website does not constitute "transacting business" in a state, *see Hearst Corp. v. Goldberger*, 1997 WL 97097, *10 (S.D.N.Y. 1997) (holding that a website with national advertisements for legal services did not constitute the transaction of business in New York nor the solicitation of business because it was viewable by persons in all fifty states), Bian-wang did not even advertise. (Supp. Decl. ¶ 7.) In fact, Yue himself has noted in his declaration ("Yue Decl."), Rule No.1 of Bian-wang is "[n]o commercial advertisement." (Yue Decl. ¶ 13.) Nor does Bian-wang offer to sell any products. Therefore, Defendant has no transaction of business to begin with, much less allow or promote it.

Yue claims that "Defendants actively reached into California and vigorously promoted the BIAN web service to California residents." Yue Opp. 6. This claim is unfounded for two reasons. First, Defendant never set foot in or advertised in California since the inception of Bian-wang. (Supp. Decl. ¶ 4.) Second, because of the anonymity of netizens, Defendant does not know their residences, much less "promoted the BIAN web service" to residents of a certain state, be it California or another state/country. Whether "four BIAN bloggers reside in California" (Yue Opp. 6.) is irrelevant, because Bian-wang is available on the World Wide Web and never limited its users to residents of any state or any country. As a matter of fact, Bian-wang never asked users to provide identification credentials such as their legal names or residential addresses before they could publish on the site. (Supp. Decl. ¶ 8.) Defendant's interactions with users of the website were only through the Internet (Supp. Decl. ¶ 6), and therefore do not qualify as purposeful activities invoking forum state benefits and protection. *See Joseph Saveri Law Firm, Inc. v. Criden*, 696 Fed.Appx., 189, 192 (9th Cir. 2017) (holding that uses of email, ordinary mail, telephone or other communication choices do not qualify as purposeful activities invoking forum state benefits and protection).

Yue also argues that Defendants purposefully availed themselves by "creat[ing] continuing obligations between themselves and Plaintiff (and other California residents) in establishing their Rule No.2." Yue Opp. 6. This argument fails for two reasons. First, there were no agreements or obligations between the parties. Anyone can publish on the site, with no strings attached and without prior approval from the web host. To the extent there were rules on moderating contents published on the site, they were announced in a blog article, not Terms and Conditions that users must accept or consent to when they register. (Supp. Decl. ¶ 8.) Second, users of Bian-wang do not pay a membership fee or perform any duty, nor are they required to

maintain continuing presence on the site. It is absurd to suggest that a non-binding rule on moderating contents created continuing obligations; or the owner of any website would have created continuing obligations with a NON-user (who nevertheless might one day register as a user on a whim) merely by establishing a moderation policy.

Many of Yue's allegations are untrue. In particular, Defendant vehemently denies Yue's allegation that "Miao specifically targeted a California audience by focusing on local California issues, including writing or posting many articles about SCA5 and inviting Plaintiff to comment." Yue Opp. 2. First, occasionally publishing articles on California-specific issues is a totally different matter than focusing on local California issues. In fact, Bian-wang was created out of frustration with the editorial policy of Sinovision.net, a New York-based site many Bian-wang users previously frequented. (Supp. Decl. ¶ 10.) The very idea behind Bian-wang was to eliminate editorial control and let users choose to discuss whatever they wish, the exact opposite to what Yue alleged. Rule No.2, the moderation rule that Yue kept referring to, starts with the declaration "[b]log articles shall not be censored, filtered or blocked." (Yue Decl. ¶ 13.) As a result, Bian-wang covered a wide range of topics. (Supp. Decl. ¶ 12, 13.) Inevitably some of them were California specific, but it does not mean Bian-wang focused on local California issues. By Yue's own admission, "I … later had discussions with the users there on a range of topics." (Yue Decl. ¶ 15.) Perhaps Yue will recall that the topics included the South China Sea disputes, the lawsuit of *Lan v. Time Warner, Inc.*, 2015 WL 480378 (S.D.N.Y. 2015), and the Indian Removal Act, none of which was a local California issue. (Supp. Decl. ¶ 14.) Second, Defendant did not invite Yue to comment. Again, by Yue's own admission, he visited Bian-wang on his own initiative after "searching on the internet", and "registered as a user … after reading the rules." (Yue Decl. ¶ 11, 15.) In sum, Yue's own declaration contradicts his allegations.

4

### III.  THERE IS NO "PURPOSEFUL DIRECTION"

Yue claims that Defendant deliberately changed Rule No.2 to intentionally harm Yue. In fact, Defendant only supplemented the rule in order to ease administrative burden. According to the Complaint ("Yue Compl"), the dispute arose when Yue demanded the removal of all articles and comments containing his name published over several years within 12 hours. Given the severe burden imposed by Yue's demand, Defendant added a footnote to state "reporting of offensive contents must take place within a year after they are published; in order to reduce the web host's burden, one must submit a table of contents when reporting." (Yue Decl. ¶ 13, Ex.3.) Yue highlighted the first half of the supplemental rule in both his Complaint and his Opposition, but never mentioned the second half, nor has he since submitted a table of offensive contents to support his demand (In another incidence when Yue did **itemize** the postings in his request to delete, Defendant readily complied. Yue Opp. 3, Yue Decl. ¶ 26, 27, Ex 5.). When viewed in its entirety, the supplemental rule was clearly intended to ease administrative burden, not to harm Yue, who nevertheless blames Defendant for his own failure to follow specific instructions of a general rule.

Yue asserts that Defendant misconstrued *Walden v. Fiore*, 134 S. Ct. 1115 (2014) and claimed that *Walden* did not apply to the instant case because "Defendants published a California subpoena on BIAN and defiantly announced that it was invalid and they would ignore it. (Yue Decl. ¶ 30, Ex.7.) Defendants interacted with the California Plaintiff while he was in California. Defendants tortiously breached their promise on the BIAN website and intentionally published the defamatory content into California." Yue Opp. 7. All these claims are unfounded. First, as a matter of fact, Defendant never made any public announcement about the subpoena. The only time Defendant disputed its invalidity was in his email reply to Yue, as shown in Yue's

5

own declaration. (Yue Decl. ¶ 31.) In any event, Defendant's refusal to provide information sought by Yue's subpoena is irrelevant to the purposeful direction test. Dwelling on it just goes to show that Yue launched the lawsuit out of personal vendetta, not because of its legal merits. Second, even though Defendant knew that Yue had resided in California, Defendant did not know whether Yue continued to reside in or was physically located in California when they interacted, because all their interactions took place on the Internet. (Supp. Decl. ¶ 16.) Third, Bian-wang's content was not directed exclusively at California residents. Because anyone with Internet access, regardless of residence or citizenship, can access and participate in the site, Bian-wang is not targeting any specific forum. (Supp. Decl. ¶ 9.)

Yue insists that *Walden* was different from the instant case because *Walden* "dealt with a situation where the defendant's alleged intentional act was directed at a plaintiff **while the plaintiff was outside of his resident state**", but in the instant case "[d]efendants interacted with the California Plaintiff while he was in California." Yue Opp. 7 (emphasis in original). In so doing, Yue seems to suggest that not only the residence but also the physical location of Yue at the time of the interaction makes a material difference in the instant case. However, this suggestion only serves to weaken Yue's argument that Defendant purposefully directed his activities to California, because Defendant had no knowledge about Yue's physical location at the time of the interaction, which took place on the Internet. (Supp. Decl. ¶ 16.)

Despite Yue's insistence to the contrary, the guiding principles of *Walden* are undoubtedly applicable to the instant case:

> Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties … our "minimum contact" analysis looks to the defendant's contact with the Forum State itself,

6

not the defendant's contact with persons who reside there … *A defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction … Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State.*

*Id.* at 1122, 1123 (emphasis added). Yue's opposition also fails to address the prior personal jurisdiction test for intentional torts, recently modified by the Ninth Circuit and cited in Defendant's Motion to Dismiss, "[f]ollowing *Walden*, we now hold that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (holding that a company's emailing a newsletter to recipients, some of which were located in California, did not create a substantial connection sufficient for specific jurisdiction).

In fact, it is Yue who misconstrued *Calder v. Jones*, 465 U.S. 783 (1984) to claim that "Defendants Caused Harm in California". Yue Opp. 8. First, because Defendant cannot limit access or distribution of the contents published on Bian-wang, this case is clearly distinguishable from *Calder*, where the defendants had control over circulation of their article. Second, defendants in *Calder* wrote an allegedly libelous article, but Defendant here is accused of not having censored Internet postings. This is a crucial difference, because under the CDA "[m]erely providing third parties with neutral tools to create web content, even if the website knows those parties are using the tools to create illegal content, does not create liability, nor does refraining from removing objectionable content, despite receiving notice." *Gavra v. Google Inc.*, 2013 WL 3788241 *2 (N.D.Cal. 2013).

7

## IV.     DEFENDANT QUALIFIES FOR IMMUNITY UNDER THE CDA

Yue does not counter Defendant's immunity claim based on the CDA, but asserts that Defendant failed to follow through his rule to remove the offensive contents. However,

[t]he decision whether to restrict or remove content falls squarely within a website operator's exercise of a publisher's traditional role and is therefore subject to the CDA's broad immunity, even where the website operator has otherwise agreed to restrict or remove content. *See, e.g., Murawski*, 514 F.Supp.2d at 591 (citing, inter alia, *Zeran*, 129 F.3d at 330) (the CDA immunized website from liability for failing to remove defamatory third-party content even though website had allegedly agreed to do so); see also *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102–03 (9th Cir.2009) (CDA barred negligent-undertaking claim against website that had allegedly agreed to remove defamatory content and failed to do so).

*Seldon v. Magedson*, 2012 WL 4475274 *18 (S.D.N.Y. 2012) (holding that plaintiff's contract claim seeking relief for defendants' failure to remove or restrict access to the allegedly defamatory posts be dismissed as barred under CDA Section 230). In *Barnes*, the Ninth Circuit held that the plaintiff could not circumvent Section 230(c) protections by simply renaming her theory of liability "negligence" instead of "publication" ("[W]hat matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress—what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another.").

Here, there is no dispute that Defendant is a provider of an "interactive computer service," as defined in 47 U.S.C. § 230(f) or that the posts constitute "information provided by another information content provider." 47 U.S.C. § 230(c)(1). Yue's Pleadings make clear that

"Yang and the DOEs conduct their defamation campaign against Plaintiff on many websites, including BIAN-WANG.COM, with filthy and indecent language" (Yue Compl. ¶ 11) and that "defamatory postings were mostly likely posted by the Defendants in the related *Yue v. Trigmax Solutions, LLC* case" (Yue Decl. ¶ 43). It is also clear that each of Yue's three claims "treats" Defendant as the "publisher" but not the creator of the alleged defamatory contents. In each instance raised by Yue's claims, Defendant only displayed contents that were created by third parties. When Yue requested deletion, Defendant did not promise (as Yahoo! Did in *Barnes*) or refuse (as alleged by Yue) to delete. He simply referred Yue to the supplemental rule. (Supp. Decl. ¶ 15.) Clearly, § 230 provides immunity for service providers like Defendant on exactly the claims that Yue alleges here. *See Seldon; Obado v. Magedson,* 2014 WL 3778261 (D.Nj. 2014) (rejecting the plaintiff's attempt to phrase allegations in a way to avoid the reach of § 230); *Dimeo v. Max*, 433 F.Supp.2d 523, 531 (E.D.Pa.2006) (holding CDA immunity applied for defamation claim against an owner of a website that hosts online message board where a third-party user posted allegedly defamatory statements).

## V. YUE'S PRONG TWO AND THREE ANALYSES ARE WITHOUT MERIT

In his Prong-two analysis, Yue has not presented any legal arguments to support his conclusory statements. His claim of Defendants' California Related Activities cites only Yue and anonymous users' connections to California. The Ninth Circuit thoroughly debunked such claim. *See Axiom Foods*, 874 F.3d and *Criden*, 696 Fed.Appx. In the instant case, the pleadings reveal that Yue's claims based on Internet posting do not "arise[] out of or relate[] to the defendant's forum-related activities." *Boschetto v. Hansing*, 539 F.3d 1011, 1021 (9th Cir. 2008). All the facts plead by Yue point to conduct exclusively in South Carolina and on the Internet.

Because both the facts and Yue's arguments fail to satisfy the purposeful availment test and the purposeful direction test, Defendant does not need to engage in the prong-three analysis of whether "the presence of some other considerations would render jurisdiction unreasonable," in addition to what has already been presented in the original Motion to Dismiss (Miao Mot. Part III.C. Analysis Prong-Three.)

## VI. YUE'S OPPOSITION TO TRANSFER VENUE IS POORLY REASONED

Yue argues that "Factor 4 is favorable to a California forum because Plaintiff has little contact with South Carolina but Defendants have plenty of contacts with California." Yue Opp. 10. This is untrue. In fact, Defendant has no contact with California (Supp. Decl. ¶ 4.), whereas Yue has already hired agents in South Carolina to serve process on Defendant. (Yue Decl. ¶ 37.) Yue also argues that "Factor 7 is again favorable to Plaintiff because most of the third party witnesses … are in California." Yue Opp. 10. This argument seems to rely on the rather curious assumption that California residents are the only witnesses. Since most Bian-wang users live outside of California but can be called upon as potential witnesses (Supp. Decl. ¶ 11), it is not true that most of the third party witnesses are in California. Therefore, Yue's argument fails.

## VII. CONCLUSION

For the foregoing reasons and the reasons set forth in Defendant's original Motion, Defendant respectfully requests that his Motion to Dismiss be granted with prejudice.

Respectfully submitted,
/s/ Chun-Hui Miao
Chun-Hui Miao
Bian-wang.com

*Pro Se*